# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

ROBERT C. LIGGINS,     ) CASE NO. 3:18-cv-02616
             )
  Petitioner,       ) JUDGE PAMELA A. BARKER
             )
    v.        ) MAGISTRATE JUDGE DAVID A. RUIZ
             )
LYNEAL WAINWRIGHT, Warden,  )
             ) **REPORT AND RECOMMENDATION**
  Respondent.      )

Petitioner, Robert C. Liggins, (Petitioner or Liggins), challenges the constitutionality of his conviction in the case of *State v. Liggins*, Sandusky County Court of Common Pleas Case No. 15-CR-928. Petitioner, *pro se*, has filed a Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254. (R. 1). Respondent, Warden Lyneal Wainwright, has filed an Answer/Return of Writ and Petitioner has filed a Traverse, to which Respondent did not file a reply. (R. 7, 8). This matter is before the undersigned Magistrate Judge pursuant to Local Rule 72.2. For reasons set forth in detail below, it is recommended that the habeas petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct. 28 U.S.C. § 2254(e)(1); *see also Franklin v. Bradshaw*, 695 F.3d 439, 447 (6th Cir. 2012) ("State-court factual findings are presumed correct unless rebutted by clear and convincing evidence."). The

Sixth District Court of Appeals (state appellate court) summarized the facts underlying

Petitioner's conviction as follows:

> {¶ 3} The following undisputed facts are relevant to this appeal. This case stems from undercover drug trafficking investigation by multiple agencies into suspected cocaine sales being conducted by appellant in Sandusky County. Appellant was a known figure to the law enforcement agencies and had been previously convicted of cocaine trafficking.

> {¶ 4} During the course of the investigation, the agents utilized a known confidential informant ("CI") to contact appellant and arrange multiple purchases of cocaine from appellant. The calls between the confidential informant and appellant were recorded by the investigating officers.

> {¶ 5} On January 19, 2012, a recorded phone conversation between the CI and appellant reflected that appellant had agreed to sell an ounce of cocaine to the CI for an agreed-upon price of $1,300, at a designated time in the Potter Village Mall parking lot in Fremont. The CI was equipped with a digital recording device prior to embarking to conduct the transaction. In addition, multiple investigating agents maintained surveillance of both the CI and the purchase location during the relevant time frame.

> {¶ 6} The recordings taken during the investigation, as well as the direct testimony from the agents, reflected that appellant was observed and positively identified while pulling into the parking lot in his motor vehicle at the designated time and location. The CI was next observed getting into appellant's vehicle, and the subject sale of cocaine from appellant to the CI was completed and recorded. Following the transaction, the recordings memorializing the offense and 16.8 grams of cocaine sold by appellant were retrieved from the CI.

> {¶ 7} On January 24, 2012, a recorded phone conversation between the CI and appellant reflected that appellant next agreed to sell two ounces of cocaine to the CI for an agreed-upon price of $2,500 at a designated time in the Potter Village Mall parking lot. Again, the CI was equipped with a digital recording device prior to the transaction. Again, agents maintained surveillance of the CI and the purchase location during the relevant time frame.

> {¶ 8} The recordings, as well as direct testimony from the agents, again reflected that appellant was observed and positively identified upon arrival to conduct the drug sale. The agents observed the CI entering appellant's vehicle, and the second subject sale of cocaine from appellant to the CI was completed. Following this second transaction, the recordings memorializing the offense and 35.5 grams of cocaine were retrieved from the CI.

2

{¶ 9} Subsequently, appellant was indicted on two counts of trafficking in cocaine, in violation of R.C. 2925.03(A)(1). Both offenses were charged as felonies of the first degree. As such, appellant was subject to potential terms of incarceration of three to eleven years on each count, for a total potential term of incarceration of 22 years.

{¶ 10} On January 10, 2017, the case proceeded to jury trial. Following jury trial, appellant was convicted on one count of trafficking in cocaine, in violation of R.C. 2925.03(A)(1), a felony of the third degree, and one reduced count of trafficking in cocaine, in violation of R.C. 2925.03(C)(4), a felony of the third degree.

{¶ 11} Appellant was sentenced to an eight-year term of incarceration on the first conviction, and a three-year term of incarceration on the second conviction, ordered to be served concurrently, for a total term of incarceration of eight years.

*State v. Liggins*, 2018-Ohio-199, ¶¶3-11, 2018 WL 481796 (Ohio Ct. App. Jan. 19, 2018),

*appeal not allowed*, 2018-Ohio-1990, ¶¶3-11, 152 Ohio St. 3d 1481, 98 N.E.3d 295 (Ohio 2018).

## II.  Procedural History

### A.  Conviction

On September 23, 2015, a Sandusky County Grand Jury issued an indictment charging Petitioner with two counts of trafficking in cocaine in violation of Ohio Revised Code (O.R.C.) §2925.03(A)(1)(C)(4)(f), a first degree felony. (R. 7-1, Exh. 1).

Petitioner entered a plea of not guilty to the charges. (R. 7-1, Exh. 2). After a jury trial, Petitioner was found guilty of one count of trafficking in cocaine in violation of O.R.C. §2925.03(A)(1)(C)(4)(f) and guilty of an amended count of trafficking in cocaine in violation of O.R.C. §2925.03(C)(4)(d), a third degree felony. (R. 7-1, Exh. 3).

On January 11, 2017, the court imposed an 8-year (96-month) prison term for the first-degree cocaine trafficking conviction and a 3-year (36-month) prison term for the third-degree

cocaine trafficking conviction.[1] (R. 7-1, Exh. 4). The sentences were to be served concurrently

for an aggregate prison-term of 8 years. *Id*.

**B.   Delayed Direct Appeal**

On February 24, 2017, Petitioner, through counsel, filed a notice of appeal with the state

appellate court. (R. 7-1, Exh. 5). On the same date, Petitioner filed a request for leave to file a

delayed appeal. (R. 7-1, Exh. 6). On April 20, 2017, Petitioner's motion for leave to file a

delayed appeal was granted. (R. 7-1, Exh. 7).

On July 31, 2017, Petitioner filed his brief on the merits raising the following assignments

of error:

1.   It was a violation of *Crawford v. Arizona* and the federal and state
     Constitutions' guarantee of the right to confront witnesses at trial to permit
     the tape recordings to be played to the jury along with hearsay explanations
     of officers as to their contents since the informant was not available to be
     confronted even though he may have planted the drugs in this case or bought
     them from another unidentified member of the Liggins family.

2.   Trial counsel was incompetent under *Strickland v. Washington* by failing to
     object to the testimony of officers explications of drug terms without their
     being qualified as experts or foundation laid, nor to object to the failure to
     follow the Criminal Rule 16(K) requirement for an expert report to be timely
     made, nor to adequately attack the eyewitness identifications both visually
     and by audio since informant was absent.

3.   The trial court impermissibly and vindictively sentenced the defendant for
     exercising his right to go to trial, increasing the plea-offered sentence the
     court said it would follow from 5 years to 8 years.

(R. 7-1, Exh. 8).

On January 19, 2018, the state appellate court found Petitioner's assignments of error were

not well-taken and affirmed the judgment of the trial court. (R. 7-1, Exh. 10).

---

[1] According to the trial court, Petitioner could be sentenced from three to eleven years in prison
for the first degree cocaine trafficking conviction. (R. 7-1, PageID# 534; Tr. 300).

On February 16, 2018, Petitioner, *pro se*, filed a notice of appeal with the Ohio Supreme

Court. (R. 7-1, Exh. 11). In his Memorandum in Support of Jurisdiction, Petitioner set forth the

following four propositions of law:

    1.    The protected federal right to confrontation is violated, *Crawford v. Arizona*, 541 U.S. 36 (2004) where []tape recording(s) and hearsay explanations of officers as to their contents where the police informant was:

        1. not available to be confronted;
        2. said informant may have himself planted the drugs; and
        3. bought them from another unidentified member of the defendant's family.

    2.    It is a violation of the Sixth Amendment right to effective assistance of counsel, *Strictland* [sic] *v. Washington*, 466 U.S. 668 where said counsel was incompetent for failing to object to testimony of officers [sic] explication [sic] of drugs terms (absent being qualified as expect [sic]) or establishment of a competent and lawful foundation for such unqualified testimony; and, for failing to object or adequately objecting to eyewitness identifications (both visually and by audio) since the police informant was not present.

    3.    Due process; equal protection and fundamental fairness are offended where a trial court impermissibly and vindictively sentences a criminal defendant to a substantially harsher penalty for exercising his Sixth Amendment right to trial by jury, by comparison to the sentence offered via a plea offer with which the court said it would follow from (5) five to a maximum of (8) years.

    4.    Where appellate counsel fails to raise a complex of substantive and plain errors affecting substantial rights, the right to counsel is implicated and presents a colorable forum for constitutional challenge under: *State v. Murnahan*, 63 Ohio St. 3d 60. *see also*:

        *Evitts v. Lucey*, __ U.S. (citation omitted);
        *Wood v. Georgia*, 450 U.S. 261 (1981); and,
        *Cuyler v. Sullivan*, 446 U.S. 335 (1280)

(R. 7-1, Exh. 12).

On May 23, 2018, the Ohio Supreme Court declined to accept jurisdiction of the appeal

pursuant to S. Ct. Prac. Rule 7.08(B)(4). (R. 7-1, Exh. 13).

**C.    Federal Habeas Petition**

Petitioner, *pro se*, filed a Petition for Writ of Habeas Corpus, on November 13, 2018,

asserting the following four grounds for relief:

> **GROUND ONE**: [C]onviction obtained in violation of Confrontational Clause of the Federal Constitution's Sixth Amendment as defined in: *Crawford v. Arizona*, 541 U.S. 36 (2004). *See also: Coy v. Iowa*, 487 U.S. 1012 (1988); and, *Kentucky v. Stincer*, 482 U.S. 736 ("cross-examination is critical for ensuring the integrity of the factfinding process," and "is the principle means by which the believability of a witness and the truth of his testimony are tested"). *id*.

> **GROUND TWO**: [C]onviction obtained in violation of the Sixth Amendment right to effective assistance of counsel, *Strickland v. Washington*, 466 U.S. 668, where counsel was grossly incompetent for failing to object to testimony of police officers' explanation of 'drug terms' (absent being qualified as experts) or (establishment of a competent and lawful foundation for the unqualified testimony), *Dalbert v. Merrell Dow Pharm., Inc.*, 61 U.S.L.W. 4805 [sic]; and, for failing to object or adequately objecting to eyewitness identifications (both visual and audio) since the "police informant" was not available to confirm or deny the truth of the matters asserted.

> **GROUND THREE**: [C]onviction obtained in violation of Sixth and Fourteenth Amendment's fundamental fairness and due process clauses where the state court impermissibly and vindictively sentenced petitioner for a substantially harsher penalty for exercising his Sixth Amendment right to trial by jury, and by comparison to the sentence offender via a plea offer with which the court itself said [that] it would follow from: (5) five years to a maximum of 8 years. s*ee: United States v. Saenz*, 134 F. 3d 697 (5th Cir. 1998).

> **GROUND FOUR**: [C]onviction obtained in violation of the Sixth Amendment guarantee to effective assistance of 'appellate counsel,' *State v. Murnahan*, 63 Ohio St. 3d 60. See also: *Evitts v. Lucy*, __ U.S. __ (citation omitted); *Wood v. Georgia*, 450 U.S. 261 (1981); and *Cuyler v. Sullivan*, 466 U.S. 335 (1980).

(R. 1).

### III. Exhaustion and Procedural Default

**A. Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings. *See* 28 U.S.C. § 2254(b), (c). This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims." *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990). However, if relief is no longer available in state court, exhaustion can be rendered moot: "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts." *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see also Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001) ("a petitioner cannot circumvent the exhaustion requirement by failing to comply with state procedural rules.") (citations omitted).

**B. Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *See, e.g.*, *Engle v. Isaac*, 456 U.S. 107, 125-130 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id*. In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id*. Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id*.

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984). A petitioner can take four actions in his brief which are significant to determining whether a claim

---

petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an independent and adequate state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id*. at 138-39; *accord Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003), *abrogated on other grounds as recognized in English v. Berghuis*, 529 Fed. App'x 734, 744-45 (6th Cir. Jul. 10, 2013).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error. *See Maupin*, 785 F.2d at 138-39. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with constitutional error." *Id*. Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied. *See, e.g., United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994). Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different. *Mason v. Mitchell*, 320 F.3d 604, 617 (6th Cir. 2003).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice." *See Coleman*, 501 U.S. at 749-50. Conclusory statements are not enough—a petitioner must "support his allegations of constitutional error with new reliable evidence -- whether it be exculpatory scientific evidence,

trustworthy eyewitness accounts, or critical physical evidence -- that was not presented at trial."

*Schlup v. Delo*, 513 U.S. 298, 324 (1995); *accord Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007) (Katz, J.)

**C. Analysis**

Respondent contends that Liggins has defaulted his fourth ground for habeas relief, which asserts ineffective of appellate counsel, due to his failure to present it to the Ohio courts in an Ohio App. R. 26(B) application.

In the case at bar, it is undisputed that Petitioner did not file an Ohio App. R. 26(B) application raising an ineffective assistance of appellate counsel claim. However, Petitioner did include a claim of ineffective assistance of counsel when he filed his *pro se* discretionary appeal to the Ohio Supreme Court, after the state appellate court denied his direct appeal. The question before the court is whether raising an ineffective assistance of appellate counsel claim for the first time on discretionary review before the Ohio Supreme Court exhausts the claim, or whether Petitioner was also required to file an Ohio App. R. 26(B) application. This issue has been addressed by the Sixth Circuit Court of Appeals as follows:

> [Petitioner] raised his ineffective assistance claim for the first time in a petition for review before the Ohio Supreme Court. The Ohio Supreme Court declined jurisdiction and summarily dismissed the appeal. Although we generally presume that a state court denying relief on a federal claim does so on the merits, we make an exception if an applicable state-law procedural principle suggests an alternative explanation. *See Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 784–85, 178 L.Ed.2d 624 (2011). This is such a case.
>
> Ohio Appellate Rule 26 provides:
>
> A defendant in a criminal case may apply for reopening of the appeal from the judgment of conviction and sentence, based on a claim of ineffective assistance of appellate counsel. An application for reopening shall be filed in the court of appeals where the appeal was decided within ninety days from journalization of the appellate judgment.... Ohio R. App. P. 26(B)(1).

10

The rule offers defendants "a separate collateral opportunity" to raise ineffective assistance claims subsequent to a direct appeal. *Morgan v. Eads*, 104 Ohio St.3d 142, 818 N.E.2d 1157, 1158 (2004). In *Ohio v. Davis*, 119 Ohio St.3d 422, 894 N.E.2d 1221 (2008), the defendant filed both an appeal to the Ohio Supreme Court and a Rule 26(B) application in the court of appeals, both asserting for the first time the ineffective assistance of appellate counsel. After the Ohio Supreme Court declined to accept the discretionary appeal, the court of appeals refused to address the merits of Davis's Rule 26(B) application, concluding that consideration on the merits was barred by *res judicata* due to his unsuccessful appeal to the Supreme Court. The Ohio Supreme Court disagreed, explaining that when it "determines whether or not to accept jurisdiction in a particular case, it is not rendering a decision on the merits." *Id*. at 1225. The Supreme Court further explained that when presented with a timely Rule 26(B) application the court of appeals is required to determine whether there is a genuine issue as to whether the applicant was deprived of the effective assistance of counsel on appeal. Thus, ***although a defendant may raise the ineffective assistance of counsel issue in both a timely direct appeal and a timely application under Rule 26(B), the Ohio Supreme Court's denial of the discretionary appeal does not exhaust the issue because the court of appeals is nevertheless obliged to address the application on the merits. In other words, raising a claim for ineffective assistance of appellate counsel in a discretionary appeal to the Ohio Supreme Court, without addressing the claim through Ohio Appellate Rule 26(B), does not satisfy the exhaustion requirement unless the Ohio Supreme Court addresses the issue on the merits***. [Petitioner] does not claim to have filed a Rule 26 motion; nor does he argue that he could now do so given the relevant deadline.

*Goldberg v. Maloney*, 692 F.3d 534, 537–38 (6th Cir. 2012) (emphasis added); *accord Ramirez v. Warden, Ross Corr. Inst.*, No. 3:14CV323, 2016 WL 5903231 *2 (N.D. Ohio Oct. 11, 2016) (Carr, J.) (finding that the petitioner did not preserve his appellate-counsel claim by asking the Ohio Supreme Court to grant discretionary review on direct appeal, but not seeking to appeal the denial of his 26(B) application); *Sluss v. Warden, Chillicothe Corr. Inst.*, No. 1:15-cv-395, 2016 WL 4533269 at *11 (S.D. Ohio Aug. 29, 2016) (finding that "[b]ecause the Ohio Supreme Court's ruling [on discretionary appeal] did not constitute a decision on the merits of petitioner's ineffective-assistance-of-appellate-counsel claim, such claim was procedurally defaulted by petitioner due to his failure to file a Rule 26(B) reopening application ….").

Consistent with the above authority, the court recommends finding that Petitioner has procedurally defaulted the fourth ground for habeas relief—his ineffective assistance of appellate counsel claim.

**D. Grounds for Excusing Procedural Default**

Because Petitioner has procedurally defaulted his fourth ground for relief, he may only avoid the default if he can demonstrate both cause *and* prejudice for his default. Petitioner, however, has failed to demonstrate "cause," which requires "something external to the petitioner, something that cannot fairly be attributed to him[;] . . . some objective factor external to the defense [that] impeded . . . efforts to comply with the State's procedural rule." *Coleman*, 501 U.S. at 753. *See also Franklin*, 434 F.3d at 417; *Maples v. Stegall*, 340 F.3d 433, 438 (6th Cir. 2003). Petitioner's traverse asserts that he was required to share a single computer with access to LEXIS with 390 other prisoners and had limited access to notary services. (R. 8, PageID# 556). Petitioner's argument is not well taken. On February 16, 2018—less than thirty (30) days after the state appellate court issued its decision concerning Petitioner's direct appeal—Petitioner filed a memorandum in support of jurisdiction before the Ohio Supreme Court in which he raised an ineffective assistance of appellate counsel claim. Pursuant to Ohio Appellate Rule 26(B)(1), Petitioner had ninety (90) days to raise the same issue. Petitioner offers no plausible explanation why he was able to meet the shorter deadline but not the later one.

To the extent Petitioner would argue that he should be excused from strict compliance with Ohio's procedural rules and that his *pro se* status should serve as cause to excuse his default, such arguments have been routinely rejected. The Sixth Circuit Court of Appeals has found that a petitioner's *pro se* status in the state court proceedings or general ignorance of the law is insufficient to establish the requisite cause to excuse a procedural default. *Bonilla v. Hurley*, 370

F.3d 494, 498 (6th Cir. 2004) (finding Bonilla's ignorance of the law and procedural requirements for filing a timely notice of appeal is insufficient to establish cause to excuse his procedural default); *accord Sabo v. Warden*, No. 2:16-cv-536, 2017 WL 56035 at *2 (S.D. Ohio Jan. 5, 2017); *Buchanan v. Bunting*, No. 5:14-cv-01656, 2015 WL 12803743 at *10 (N.D. Ohio Sept. 8, 2015) (White, M.J.), *report and recommendation adopted*, 2016 WL 6995343 (N.D. Ohio Nov. 30, 2016) (Lioi, J.); *Tolliver v. Sheets*, 530 F. Supp. 2d 957, 981 (S.D. Ohio 2009); *Arnold v. Warden, Lebanon Correctional Inst.*, 832 F. Supp. 2d 853, 859 (S.D. Ohio 2011).

Therefore, Petitioner's *pro se* status or ignorance of the law cannot serve as cause to excuse the procedural default of his habeas claims. Because Petitioner has failed to demonstrate cause, the issue of prejudice is moot.

Petitioner also cannot show that he is actually innocent, as he has not presented this court with any new and reliable evidence (*i.e.* exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence that was not presented at trial) that could satisfy the aforementioned *Schlup* standard. Therefore, it is recommended that ground four of the petition be dismissed as procedurally defaulted.

## IV.   Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), 28 U.S.C. § 2254. *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997). The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court. *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005). However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413. By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. However, a federal district court may not find a state court's decision unreasonable "simply because that court concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id*. at 411. Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law. *Id*. at 410-12. "This standard generally requires that federal courts

14

defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)

(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

## A. Ground One: Confrontation of Witnesses

In his first ground for relief, Petitioner asserts that his Sixth Amendment right to confront

any witnesses against him was violated when the trial court permitted the admission of taped

audio recordings of conversations that allegedly involved Petitioner and the State's confidential

informant (CI) where Petitioner did not have the opportunity to cross examine the CI. (R. 1,

PageID# 68-69). Petitioner further asserts that his Sixth Amendment right was violated when the

trial court allowed police officers to testify to hearsay over his objections.[3]

The state appellate court addressed Petitioner's argument as follows:

{¶ 12} In the first assignment of error, appellant maintains that the trial court
abused its discretion in permitting the admission of the recordings taken of the
subject unlawful drug sales. We do not concur.

{¶ 13} Notably, appellant concedes that such recordings are predominantly found
to be permissible by Ohio courts, but nevertheless maintains that the trial court
abused its discretion.

{¶ 14} In support, appellant puts forth the speculative assertion, devoid of
supporting evidence, that the person who engaged in the unlawful drug
transactions, as witnessed by multiple agents and digitally recorded, could
actually have been one of appellant's brothers or male relatives due to a claimed
close family resemblance. We are not persuaded.

{¶ 15} Appellate court review of contested trial court evidentiary rulings is
conducted pursuant to the abuse of discretion standard. To establish an abuse of
discretion by the trial court, more than a mere error of law or judgment must be
demonstrated. The disputed trial court conduct must be shown to have been
unreasonable, arbitrary or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d
217, 450 N.E.2d 1140 (1983).

---

[3] Neither the petition nor the traverse identifies with any particular specificity the alleged
instances of hearsay testimony offered by the police officers. As set forth in greater detail below,
the court has reviewed the testimony presented and finds that, as a whole, the officers testified to
what they witnessed first-hand.

{¶ 16} In applying this standard to the instant case, we note that ***the essence of appellant's first assignment of error is rooted in the mistaken notion that appellant's identity as the party who engaged in the unlawful underlying cocaine transactions could not have been established without the admission of the disputed recordings***. The record of evidence refutes this contention.

{¶ 17} The record reflects that multiple law enforcement agencies and multiple agents from those agencies had placed appellant under surveillance and were engaged in direct surveillance of appellant prior to these offenses. ***The record reflects that agents furnished direct testimony identifying appellant as the offender, as well as consistently identifying appellant's motor vehicle as the one in which the drug transactions occurred***.

{¶ 18} Their testimony affirmed that appellant appeared at the designated time and location in his vehicle, the CI entered appellant's vehicle, the cocaine purchases transpired, and immediately afterward the agents recovered the cocaine from the CI.

{¶ 19} Given these facts and circumstances, the record reflects no evidence from which the disputed trial court evidentiary ruling can be found to be unreasonable, arbitrary or unconscionable. Wherefore, we find appellant's first assignment of error not well-taken.

*Liggins*, 2018-Ohio-199 at ¶¶ 12-19 (emphasis added).

The court's own review of the trial testimony confirms the state court's characterization of the testimony introduced at trial. Furthermore, the evidence supports the state court's conclusion that the disputed recordings between Petitioner and the CI were not necessary to prove that Petitioner was the individual who engaged in the underlying cocaine transactions.

Agent Mark Apple testified that he was contacted by the CI, that he made the audio recordings of telephone calls between the CI and Petitioner, and that the recordings did not specifically mention cocaine. (R. 7-1, PageID# 341-346; Tr. 108-112). Agent Apple testified that he provided "buy money" to the CI to complete the transaction, and searched the CI's person and vehicle prior to the controlled buy to make sure there were no drugs, weapons, contraband, or any money other than the "buy money" in his possession. (R. 7-1, PageID# 346; Tr. 113). He

16

placed a recording device on the CI prior to the January 19, 2012 meet up, and followed the CI to the agreed upon meeting place, never losing sight of the CI. (R. 7-1, PageID# 347-348; Tr. 114-115). After the controlled buy, Agent Apple testified that he met the CI at a pre-arranged location and again searched the CI's person and vehicle for money and drugs to make sure the CI had expended the money provided and that no drugs remained other than the drugs the CI obtained during the transaction and provided to Agent Apple.[4] (R. 7-1, PageID# 349-350; Tr. 116-117). Agent Apple testified to basically the identical procedures taking place on January 24, 2012, with respect to a second controlled buy. (R. 7-1, PageID# 352-358; Tr. 119-125).

Agent Kevin Graber testified that on January 19, 2012, he was instructed to be at a location where a controlled buy was scheduled. (R. 7-1, PageID# 431; Tr. 198). Another agent, Mark Ellinwood, testified that he witnessed the CI arrive in a vehicle at the designated location, and that a few minutes later a green Cadillac pulled up next to the CI. (R. 7-1, PageID# 457, Tr. 223-24). Agent Ellinwood witnessed the CI enter the green Cadillac and then return to his own vehicle a few minutes later. *Id*. Agent Graber, who was in a moving vehicle at the time of the drug transaction, testified that he saw the Cadillac in the parking lot and followed it as it exited the parking lot. (R. 7-1, PageID# 434; Tr. 201). Agent Graber testified that he was able to get close enough to the green Cadillac to observe the license plate on the vehicle and broadcast it.[5]

_____

[4] Gerald Skowronski testified that he worked in a DEA lab testing samples for the presence of controlled substances. (R. 7-1, PageID# 392; Tr. 159). He tested the samples from the two buys in the case at bar and found them to contain 62.1 percent and 66 percent cocaine respectively. (R. 7-1, PageID# 395-403; Tr. 162-170).

[5] After consulting his report, Agent Graber testified that the license plate he broadcast was Ohio FKS 3264. (R. 7-1, PageID# 436; Tr. 203). Arlin Hill, a records clerk for the Ohio Bureau of Motor Vehicles, testified that he pulled the records for the license plate FKS 3264 and that the registration for said plate was issued to Robert C. Liggins on December 15, 2011. (R. 7-1, PageID# 448-451; Tr. 215-218).

(R. 7-1, PageID# 435; Tr. 202). He observed the green Cadillac park in front of a business called "Play Station." *Id*. A different officer, Agent Michael Noel, testified that he was engaged in mobile surveillance during the controlled buy on January 19, 2012. (R. 7-1, PageID# 411; Tr. 178). Agent Noel testified that he observed the green Cadillac park near the Play Station business, and that he personally observed Liggins exit the vehicle. *Id*. He specifically identified the individual he saw exit the vehicle as the defendant. (R. 7-1, PageID# 412, Tr. 179). Almost thirty minutes later, Agent Noel witnessed Petitioner leave the Play Station business and re-enter the green Cadillac. *Id*.

Agent Noel testified that, on January 24, 2012, he was again assigned to conduct mobile surveillance during a controlled buy. (R. 7-1, PageID# 414; Tr. 181). He personally witnessed the CI arrive in his vehicle at the designated location, followed about ten minutes later by the green Cadillac. (R. 7-1, PageID# 415; Tr. 182). Agent Noel witnessed the CI enter the green Cadillac and then exit a few minutes later. *Id*. He then testified that he observed the green Cadillac park near the Play Station business, and saw Liggins exit the vehicle and enter a barber shop next to the Play Station. (R. 7-1, PageID# 416-417; Tr. 183-184). He again identified the defendant sitting in the courtroom as the individual he saw exiting the green Cadillac, and also that he did not observe anyone else in the vehicle. *Id*. Agent Graber testified that he observed the same green Cadillac from the previous buy driving towards the site of the second controlled buy. (R. 7-1, PageID# 438; Tr. 205). He further testified that he saw Petitioner driving the car, and identified him in the courtroom. *Id*. He saw no one else in the vehicle. *Id*.

Petitioner has not identified any clearly established law, as set forth by the United States Supreme Court, that indicates the admission of a recorded conversation between a defendant and a CI, who does not testify at trial, results in a *per se* Confrontation Clause violation. The

Confrontation Clause of the Sixth Amendment guarantees that, "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." This guarantee applies to both federal and state prosecutions. *See Pointer v. Texas*, 380 U.S. 400, 406, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965). The Confrontation Clause bars the admission of "testimonial statements" made by persons who have not testified as witnesses at trial. *Crawford v. Washington*, 541 U.S. 36, 68-69, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); *United States v. Cromer*, 389 F.3d 662, 671 (6th Cir. 2004). Nevertheless, the existing case law does not support Petitioner's argument. The Seventh Circuit Court of Appeals addressed the issue of the admission of audio recordings by a CI as follows:

> Nettles argues that he was convicted in part upon the audio and video recordings of his conversations with Anicua and "Ali." Nettles contends that because he was not given the opportunity to cross-examine Ali, his Sixth Amendment right to confrontation was violated. He alleges that this prevented him from effectively presenting his entrapment defense. In response, the government contends that there was no Confrontation Clause violation because Ali's statements were not used "to establish the truth of the matter asserted," and that Ali was not a "witness" for Sixth Amendment purposes. Rather, Ali's statements were merely used as "context" for Nettles's otherwise admissible statements.
>
> *Crawford v. Washington* provides that "[t]he [Confrontation] Clause... does not bar the use of testimonial statements for purposes other than establishing the truth of the matter asserted." 541 U.S. 36, 59 n.9, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004) (citing *Tennessee v. Street,* 471 U.S. 409, 414, 105 S. Ct. 2078, 85 L. Ed. 2d 425 (1985)). We have read this language to mean that when statements are merely offered to show context, they are not being offered for the truth of the matter asserted, and therefore, *Crawford* does not require confrontation. *United States v. Tolliver*, 454 F.3d 660, 666 (7th Cir. 2006). In *Tolliver*, we examined a nearly identical issue to the one presented in the case at bar: whether the defendant's right to confrontation was violated when the government introduced audio-tapes of conversations between the defendant and a confidential informant who did not testify at trial. *Id.* at 664. We ruled that the informant's "statements were admissible to put [the defendant]'s admissions on the tapes into context, making the admissions intelligible for the jury." *Id.* at 666. Applying this rule to Nettles's case, Ali's recorded statements are admissible if they were merely used to provide context to Nettles's admissions.

*United States v. Nettles*, 476 F.3d 508, 517 (7th Cir. 2007). In a factually similar case, the Sixth

Circuit Court of Appeals made the following determination:

> [Defendant] next claims that the admission of an audio tape recording of the
> undercover drug buy also violated the Confrontation Clause…. A review of the
> transcript shows that Deputy Wien testified that he had recovered four pills and
> four packets from the confidential informant after the controlled buy. Deputy
> Wien then testified that he can be heard on the audio tape asking the confidential
> informant if he got four pills and the confidential informant indicated that he did.
> Thus, the statements made by the confidential informant are merely duplicative of
> Deputy Wien's testimony and do not reveal new information. Based on the
> foregoing, reasonable jurists could not debate the district court's conclusion that
> no Confrontation Clause violation occurred and that the state appellate court's
> decision was not an unreasonable application of clearly established federal law.

*Baker v. Perry*, No. 14-1829, 2014 U.S. App. LEXIS 25043, at *5-6 (6th Cir. Dec. 22, 2014).

In the case at bar, the direct testimony of the law enforcement agents and other witnesses

at trial are clearly capable of proving that a CI was given "buy money," that he and his vehicle

were searched for money and drugs before and after the controlled buys, that the CI was

followed to and from the controlled buys, that the CI in fact obtained cocaine during these

controlled buys from an individual driving a green Cadillac, that several agents followed said

Cadillac after both buys and identified Petitioner as the only person in the vehicle, and that the

license plate of said green Cadillac was registered to Petitioner. As in *Baker*, the audio

recordings are, at most, merely duplicative of the evidence presented. Further, the recordings can

reasonably be construed as being offered to show context, and not for the truth of the matter

asserted. In fact, the telephone calls appear to specifically avoid any specific mention of cocaine

or narcotics. However, the audio recordings do offer context, as jurors could well be perplexed as

to what prompted agents to follow the CI to a designated location, or why the CI was provided

buy money in the first instance.

Moreover, even if the audio recordings are deemed "testimonial," the Sixth Circuit has unambiguously stated that "Confrontation Clause errors are subject to harmless-error analysis." *Poole v. MacLaren*, 547 Fed. App'x 749, 752-753 (6th Cir. 2013) (quoting *Vasquez v. Jones*, 496 F.3d 564, 574 (6th Cir. 2007) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 106 S.Ct. 1431, 89 L.Ed.2d 674 (1986)); *Chapman v. California*, 386 U.S. 18, 21-22, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967)). "Error is harmless where 'it did not have a substantial and injurious effect or influence in determining the jury's verdict.'" *Poole*, 547 Fed. App'x at 752 (quoting *Matthews v. Warden, Ross Corr. Inst.*, 502 Fed. App'x 561, 563 (6th Cir. 2012). When determining whether a Confrontation Clause violation resulted in harmless error, a court considers the following factors:

> (1) the importance of the witness' testimony in the prosecution's case; (2) whether the testimony was cumulative; (3) the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points; (4) the extent of cross examination otherwise permitted; and (5) the overall strength of the prosecution's case.

*Jensen v. Romanowski*, 590 F.3d 373, 379 (6th Cir. 2009).

In this case, the audio recordings involving the CI, at most, establish an intent by the person the CI called to enter into an illicit transaction. This evidence, however, is far less probative of guilt than the direct testimony of the agents that identified Petitioner as the operator of the green Cadillac that met with the CI at the designated places and dates. Furthermore, the fact that Agent Apple testified to recovering cocaine from the CI immediately after the controlled buys is immeasurably more significant than the audio recordings.[6] The audio recordings were merely cumulative, and were unnecessary to establishing the guilt of the Petitioner. The

---

[6] As indicated during trial testimony, the CI and his vehicle was searched before and after for narcotics, and agents followed the CI the whole time. Thus, the possibility that the drugs were obtained from another source was reasonably eliminated by this evidence presented at trial.

testimony of the agents further corroborates the information expressed during the recordings, as the Petitioner attended and entered into the illicit transactions arranged with the CI. Thus, *assuming arguendo* the audio recordings were testimonial, the court recommends finding that any error was harmless.

Therefore, although the state appellate court did not address Petitioner's argument squarely in a Confrontation Clause framework, this court cannot find that the state courts' adjudication of the first ground for relief was contrary to nor involved an unreasonable application clearly established federal law as set forth by the Supreme Court.

**B. Ground Two: Ineffective Assistance of Trial Counsel**

Petitioner's second ground for relief claims his trial counsel provided ineffective assistance by failing to object to the law enforcement agents' explanation of "drug terms" without being qualified as experts, for not providing expert reports, and for not adequately attacking the identification of Petitioner by the various eyewitnesses. (R. 1, PageID# 70-72).

When addressing a claim of ineffective assistance of counsel, courts apply the familiar standard set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), which requires a petitioner to demonstrate that: (1) his counsel's performance was deficient; and (2) the allegedly ineffective assistance resulted in prejudice to the petitioner, meaning that "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 687. "Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* Moreover, to establish the prejudice component of the *Strickland* standard, a defendant must show that there is "a reasonable probability that, but for counsel's unprofessional errors, the result of the

22

proceeding would have been different." *Lundgren v. Mitchell*, 440 F.3d 754, 799 (6th Cir. 2006) (citations omitted).

Where the state appellate court, as here, correctly identifies *Strickland* as the standard for assessing a petitioner's ineffective assistance claim, its ruling must unreasonably apply that standard in order for the petitioner to receive habeas relief. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) ("The question is not whether a federal court believes the state court's determination under *Strickland* was incorrect but whether that determination was unreasonable - a substantially higher threshold.") (internal quotation marks omitted). Federal habeas courts employ "a 'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 134 S. Ct. 10, 13, 187 L. Ed. 2d 348 (2013); *see also Cullen v. Pinholster*, 563 U.S. 170, 131 S. Ct. 1388 (2011) ("Our review of the [state court's] decision is thus doubly deferential. We take a highly deferential look at counsel's performance through the deferential lens of § 2254(d).") (internal citations and quotation marks omitted).

The state appellate court did not squarely address counsel's decision not to request that the State be required to certify the agents who testified as experts. First, the court focuses on Agent Apple, because he is the witness who testified that an "onion" means an ounce in the drug trade, the only specific example of such drug terminology raised by Petitioner's counsel in state court. (R. 7-1, PageID# 165, 344; Tr. 111). Some Ohio courts have found a prosecutor's questioning of a police detective regarding "drug terminology and value to be entirely proper," that an officer's testimony in such regard is based on knowledge and experience and thus not expert testimony. *See, e.g., State v. Brand*, 2016-Ohio-7456 at ¶ 40, 2016 Ohio App. LEXIS 4323, 2016 WL 6269368 (Ohio Ct. App. Oct. 26, 2016). The Sixth Circuit has held similarly in

federal cases. *See, e.g, United States v. Daniels*, Nos. 90-1986, 90-1987, 90-2018, 1991 WL 278797 at *3 (6th Cir. Dec. 26, 1991) (finding "[t]he district court did not abuse its discretion … by allowing [an] undercover agent … to testify as an expert on coded drug terminology the agent and the defendants used during the transaction. The admission of expert testimony by a law enforcement officer is a matter within the broad discretion of the trial judge and we will sustain admission of such testimony unless it was manifestly erroneous.") (citing *U.S. v. Hoffman*, 832 F.2d 1299 (1st Cir. 1987) (DEA agent permitted to "decode" drug negotiations in intercepted phone call); *cf. U.S. v. Paiva*, 892 F.2d 148, 157 (1st Cir. 1989) ("Although a drug user may not qualify as an expert, he or she may still be competent, based on past experience and personal knowledge and observation, to express an opinion as a lay witness that a particular substance perceived was cocaine or some other drug."). Thus, the court cannot conclude that trial counsel's tactical choice to not raise a likely futile challenge resulted in constitutionally deficient representation.

Further, even when proceeding for the sake of argument as if counsel's failure to ask the court to require the prosecution to attempt to certify Agent Apple as an expert before allowing him to testify to drug-related terminology was deemed deficient performance, Petitioner cannot demonstrate that counsel's failure to do so meaningfully prejudiced his case. Agent Apple has been designated as an expert in drug cases. *See, e.g., Rodriguez v. Warden, London Corr. Inst.*, 2012 WL 946790 at *1 (N.D. Ohio Mar. 20, 2012) ("Based on their experience, Agents Apple and Ackley were both deemed by the court as experts in drug organizations and testified as to how drug organizations generally work."). In addition, though Agent Noel did not testify regarding drug terminology, he too has been certified by another Ohio court as an expert in such regard based on his "qualifications, knowledge, and experience." *State v. Jones*, 2019-Ohio-301

24

at ¶¶49-51, 2019 Ohio App. LEXIS 324 (Ohio Ct. App.) ("In sum, we find the elements of

Evid.R. 702 were satisfied, and the trial court did not commit error in determining Noel to be an

expert.")

Turning to the issue of whether counsel was deficient with respect to the identification of

Petitioner by the various agents, the state appellate court found as follows:

Here, the state appellate court, after identifying the *Strickland* standard's two-pronged

test, addressed Petitioner's claims as follows:

{¶ 20} In appellant's second assignment of error, appellant contends that trial
counsel was ineffective. We do not concur.

{¶ 21} In order to demonstrate ineffective assistance of counsel, it must be shown
both that trial court counsel's performance was deficient, and it also must be
shown that but for the demonstrated deficiencies, the outcome of the trial
would have been different. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct.
2052, 80 L.E.2d 674 (1984).

{¶ 22} Although appellant concedes that trial counsel did object to the admission
of the recordings, and also objected to the lack of direct testimony from the CI,
appellant nevertheless concludes that trial counsel did not, "[A]dequately work
with what was there and obvious."

{¶ 23} In support of the second assignment of error, appellant proffers the
position that this case was prejudiced and compromised because several of
appellant's brothers and male relatives, "[B]ear a remarkable resemblance to
each other," thereby suggesting without any evidentiary support that one of
appellant' s male relatives was the actual perpetrator, not appellant.

{¶ 24} Notably, at the conclusion of the claims of various alleged errors by trial
counsel, appellant concludes that the alleged deficiencies, "[M]ay have affected
the outcome of the case." (Emphasis added).

{¶ 25} We note that appellant's assertions in support of the second assignment of
error are rooted in conjecture and proper tactical decisions. Appellant has failed to
demonstrate trial counsel deficiencies but for which the outcome of this case
would have been different. Wherefore, we find appellant's second assignment of
error not well-taken.

*Liggins*, 2018-Ohio-199.

The court cannot find that the state court's analysis involved an unreasonable application of *Strickland*. Neither the petition nor the traverse points to any error or inaccuracy in the state appellate court's determination that Petitioner's argument—that the seller at the controlled buys may have been a relative or sibling who resembled him in physical appearance—is purely the product of speculation and conjecture. Petitioner's brief before the state appellate court, when making this argument, appears to consist of nothing more than appellate counsel's unsubstantiated assertion that "[s]everal Liggins relatives and brothers bear a remarkable resemblance to each other." (R. 7-1, PageID# 164). It is not even clear whether this assertion is appellate counsel's own determination after having viewed Petitioner's relatives, or whether he is merely repeating an unsubstantiated assertion of the Petitioner.

The court perceives no deficiency in the state court's determination that trial counsel was not constitutionally deficient. Therefore, it is recommended that the third ground for relief be deemed meritless.[7]

## C. Ground Three: Vindictive Sentence

In his third ground for relief, Petitioner contends that his sentence was the product of judicial vindictiveness, as he received a greater sentence after he exercised his right to a jury trial than offered in plea bargaining prior to trial. (R. 1). Specifically, Petitioner asserts that he was offered a sentence of five years prior to trial and ultimately ended up being sentenced to an

---

[7] Although appellate counsel had argued that trial counsel erred by not requesting jury instructions on either audio or visual identification, Petitioner has not raised any issue with trial counsel's failure to request any specific jury instruction. (R. 1). To the extent Petitioner takes issue with no witness identifying his voice on the audio recordings, the court has already determined in its analysis with respect to ground one that there was ample visual identification of Petitioner by various agents rendering the audio recordings cumulative evidence.

aggregate term of eight-years in prison.[8] *Id*. Petitioner maintains the trial court's vindictiveness was illustrated by the trial judge's statement that Petitioner had put the state to considerable expense. (R. 1, PageID# 74).

"It is improper for a [] judge to penalize a defendant for exercising his constitutional right to plead not guilty and go to trial, no matter how overwhelming the evidence of his guilt." *United States v. Derrick*, 519 F.2d 1, 3 (6th Cir. 1975); *accord United States v. Frost*, 914 F.2d 756, 774 (6th Cir. 1990). In *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), the Supreme Court recognized that where a defendant has successfully appealed his conviction and then is convicted again on retrial, due process is violated if the sentence imposed on resentencing is influenced by vindictiveness on the part of the sentencing court. Although the idea that a "presumption" of vindictiveness arises in such a scenario "appears nowhere in the *Pearce* opinion, the ruling has since been read to apply 'a presumption of vindictiveness, which may be overcome only by objective information in the record justifying the increased sentence.'" *Goodell v. Williams*, 643 F.3d 490, 496 (6th Cir. 2011) (quoting *United States v. Goodwin*, 457 U.S. 368, 374, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982)). "Where the prophylactic rule of *Pearce* does not apply, the defendant may still obtain relief if he can show actual vindictiveness upon

---

[8] It bears noting that the pretrial plea offer involved dismissal of the third-degree cocaine trafficking charge, and a reduction of the first-degree charge to a second-degree felony for which the sentencing range was two to eight years of prison. (R. 7-1, PageID# 535; Tr. 301). The trial court indicated it would have considered a five-year sentence. *Id*. Therefore, Petitioner would have received three-years less than the maximum on the second degree felony. As it stands, Petitioner also received three-years less than the maximum on the first-degree felony conviction of which he was convicted. In addition, he received the added benefit of having his sentences run concurrently, thereby receiving a total prison-term of eight years instead of eleven. (R. 7-1, Exh. 4). Thus, Petitioner could have received an aggregate sentence of fourteen years had he been sentenced to the maximum term on Count One and had the three-year sentence imposed on Count Two run consecutively.

resentencing." *Texas v. McCullough*, 475 U.S. 134, 138, 106 S.Ct. 976 (1986).

The state appellate court addressed this ground for relief as follows:

{¶ 26} In appellant's third assignment of error, appellant sweepingly suggests that the trial court "vindictively" sentenced appellant. This contention is presented in a case in which appellant, a repeat felony drug trafficking offender, was sentenced to a total term of incarceration of eight years in a case which could have resulted in a total term of incarceration of 22 years for the offenses as charged, and could have resulted in a total term of incarceration of 14 years for the offenses as convicted. We are not convinced.

{¶ 27} In support of the third assignment of error, appellant again relies upon unsupported supposition. Appellant unilaterally maintains that the trial court was "irked" at having the matter proceed to jury trial and, therefore, further speculatively concludes that the trial court "pandered" to the jurors in imposing an allegedly harsh sentence for retaliatory purposes. Appellant's theory, devoid of supporting evidence, is that the trial court prejudicially, unlawfully sentenced appellant. The record of evidence does not bear out this position.

{¶ 28} Appellant relies predominantly upon the fact that the potential term of incarceration discussed in tentative plea negotiations was five years, in comparison with the eight-year term of incarceration ultimately imposed. Notably, appellant's suggestion of impropriety in that discrepancy fails to recognize that the rejected plea agreement entailed a plea of guilty to one of the two offenses, with the remaining offense dismissed. Conversely, appellant elected to proceed to trial on two felony offenses, and was convicted and sentenced on two felony offenses. As such, the suggested comparison is illusory.

{¶ 29} In addition, appellant maintains that the record somehow establishes a vindictive, unlawful sentence due to the fact that the trial court mentioned that the proceedings, "[P]ut the state to considerable expense." Again, appellant's suggestion fails to take into consideration the full context and extent of the trial court's deliberations prior to imposing sentence, as reflected in the sentencing transcript.

{¶ 30} The transcript of proceedings reflects that the trial court went on to emphasize the significant consideration of appellant's past trafficking in cocaine conviction in the same jurisdiction and the corollary public interest consideration in adequately addressing the issue.

{¶ 31} We find that the record of evidence reflects that appellant has failed to establish that the disputed, less than maximum, concurrent trial court sentence was in any way unlawful. We find appellant's third assignment of error not well-taken.

*Liggins*, 2018-Ohio-199 at ¶¶26-31.

A decision from another district court within this circuit has rejecting a nearly identical argument—namely that a greater sentence than offered prior to trial is demonstrative of vindictiveness.

> [I]n *Alabama v. Smith*, 490 U.S. 794, 104 L. Ed. 2d 865, 109 S. Ct. 2201 (1989), the Supreme Court held "that no presumption of vindictiveness arises when the first sentence was based upon a guilty plea, and the second sentence follows a trial." *Id*. at 795.
>
> The Court in *Smith* observed that a sentencing judge has considerably more relevant sentencing information after trial than is generally available when the defendant pleads guilty. During a trial, "the judge may gather a fuller appreciation of the nature and extent of the crimes charged" and gain "insights into [the defendant's] moral character and suitability for rehabilitation." *Id*. at 801. In addition, "after trial, the factors that may have indicated leniency as consideration for the guilty plea are no longer present." *Ibid*. Thus, it is not reasonable to presume that a longer sentence imposed after trial was motivated by unconstitutional vindictiveness. Where there is no reasonable likelihood that the sentence is the product of actual vindictiveness on the part of the sentencing authority, the burden is on the defendant to prove actual vindictiveness in the sentencing decision. *Id*. at 799.
>
> In the present case, the petitioner was not resentenced after retrial following a successful appeal, or after overturning or withdrawing a guilty plea. Rather, he was sentenced after conviction at trial following his decision to reject a plea bargain and plead not guilty. No presumption of vindictiveness arises in this context from the trial judge's thirty year minimum sentence and the petitioner bears the burden of proving that actual judicial vindictiveness motivated the sentence he received after trial. *See Wasman v. United States*, 468 U.S. 559, 567-68, 82 L. Ed. 2d 424, 104 S. Ct. 3217 (1984).

*Williams v. Jones*, 231 F. Supp. 2d 586, 598-99 (E.D. Mich. 2002).

Given the authority cited above, it was incumbent on Petitioner to demonstrate *actual* vindictiveness, as no presumption applies. The state appellate court did not unreasonably apply clearly established federal law by finding that Petitioner's accusations of vindictiveness were completely "devoid of supporting evidence." The state appellate court reasonably pointed out

29

that the plea offer included the dismissal of one of the charges against Petitioner, while he was convicted of two separate crimes at trial. Nor can this court find that the state court engaged in an unreasonable determination of the facts. Despite Petitioner's observation that the trial court noted he had put the state to considerable expense by going to trial, the state court reasonably points out that Petitioner omits the full context of the trial court's sentencing determination. The state appellate court pointed out that the trial court took note of Petitioner's prior conviction, yet the trial court still imposed a less than maximum and concurrent sentence. Thus, the court finds no merit in ground three.

### V. Conclusion

For the foregoing reasons, it is recommended that Robert Liggins's Petition for Writ of Habeas Corpus be DENIED.

s/ David A. Ruiz_____
United States Magistrate Judge

Date: June 3, 2021

### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may forfeit the right to appeal the District Court's order. *See Berkshire v. Beauvais,* 928 F.3d 520, 530-31 (6th Cir. 2019).**